```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| DELLISA RICHARDSON, | Civ. No. 19-8935-NLH-MJS |
| Plaintiff, | **OPINION** |
| v. | |
| CASCADE SKATING RINK, et al., | |
| Defendants. | |

**APPEARANCE**:

DELLISA RICHARDSON
1510 CHESTNUT LANE
WESTVILLE, NJ 08093

>    *Plaintiff appearing pro se*

CHRISTOPHER D. WARREN
WARREN LAW GROUP
112 W. 34TH STREET - 17TH FLOOR
NEW YORK, NY 10120

>    *On behalf of Defendants*

**HILLMAN**, District Judge

   Before the Court is the motion [Docket Number 56] of *pro se* Plaintiff Dellisa Richardson, seeking a preliminary injunction against Defendants Cascade Skating Rink ("Cascade") and Live Life Headphones LLC ("Live Life") (collectively "Defendants"). Defendants oppose the motion.  (Brief in Opposition ("Opp. Br."), [Dkt. No. 63]).  The Court has considered the parties' submissions and decides this matter without oral argument

1

pursuant to Local Civil Rule 78.1(b). For the reasons expressed below, Plaintiff's motion will be granted.

## Background

On January 4, 2021, Plaintiff filed the Amended Complaint against Defendants claiming that they were infringing on her Silent Skate trademark. Plaintiff's Silent Skate trademark was filed on October 2, 2018 and federally registered on March 12, 2019. Plaintiff's Silent Skate trademark is for "Arranging, organizing, conducting, and hosting social entertainment events; Hosting social entertainment events, namely, skating events, for others." ( [Dkt. No. 71-16], at 4). Plaintiff hosts entertainment events at which participants listen to music through headphones while skating. Despite Plaintiff's Silent Skate trademark, Defendants have advertised similar skating events using the phrase "Silent Skate." As a result, Plaintiff alleges Defendants infringed on her Silent Skate trademark.

## DISCUSSION

### I. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case because it presents a federal question under the Lanham Act. See 28 U.S.C. § 1331.

### II. Legal Standard

A preliminary injunction "is an extraordinary remedy . . . which should be granted only in limited circumstances." Holland v. Rosen, 895 F.3d 272, 285-86 (3d Cir. 2018) (internal

2

citations omitted).  A preliminary injunction should not be issued "unless the movant, by a clear showing, carries the burden of persuasion." Id. (citation omitted).  That burden typically involves four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm to the applicant; (3) whether the denial of a preliminary injunction would injure the moving party more than the issuance of an injunction would harm the non-moving party; and (4) whether the grant of relief would serve the public interest.  Id. (citation omitted).

"[A] movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017) (citations omitted).

"If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  Id.  "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."  Id. (citation omitted).

3

**III. Analysis**

    **A. Likelihood of Success on the Merits**

The first preliminary injunction factor requires Plaintiff to show that she is likely to prevail at the ultimate trial on the merits. Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990). "While 'courts use a bewildering variety of formulations of the need for showing some likelihood of success . . . [a]ll courts agree that plaintiff must present a prima facie case but need not show that he is certain to win.'" Mister Softee, Inc. v. Amanollahi, No. 14-1687, 2014 U.S. Dist. LEXIS 90370, at *16 (D.N.J. July 1, 2014)(quoting Wright & Miller, Federal Practice and Procedure, § 2948).

To state a claim for trademark infringement, 15 U.S.C. § 1114, a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).

Defendants do not deny that Plaintiff has satisfied the first two elements because Plaintiff's Silent Skate trademark is federally registered with the United States Patent and Trademark Office ("USPTO"). (Opp. Br. at 1.) The "certificate of registration issued by the United States Patent and Trademark

4

Office" for Plaintiff's Silent Skate trademark "constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement." Mister Softee, Inc., 2014 U.S. Dist. LEXIS 90370, at *17.[1]

Defendants argue Plaintiff cannot satisfy the third element – a likelihood of confusion. (Opp. Br., [Dkt. No. 63], at 1-2). A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." A & H Sportswear,

---

[1] The Court notes Defendants' fifth affirmative defense is for "Generic Use." Defendants argue "[t]he allegations made in the Amended Complaint are barred, in whole or in part, because the alleged marks at issue are generic." Defendants' Answer to the Amended Complaint, [Dkt. No. 39], at 4. The Court recognizes that registration serves as prima facie evidence of the validity of a mark, meaning that Plaintiff "is entitled to a strong prima facie presumption that its registered mark is either not merely descriptive or if descriptive, that secondary meaning is presumed, which amounts to the same thing." Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., 2016 U.S. Dist. LEXIS 84299, at *50 (D.N.J. June 29, 2016)(citing 15 U.S.C. § 1115(a); 2 McCarthy on Trademarks § 11:43.). However, this is a rebuttable presumption. J & J Snack Foods, Corp. v. Nestle USA, Inc., 149 F. Supp. 2d 136, 145 (D.N.J. June 27, 2001)("If plaintiff has a federal registration, then there is a strong presumption that the term is not generic, and a defendant must overcome that presumption."). Here, despite Defendants' affirmative defense regarding generic use, Defendants fail to advance any argument in opposition to Plaintiff's Motion for Preliminary Injunction that Plaintiff cannot satisfy the first element because the trademark, Silent Skate, is merely descriptive of the Plaintiff's services. Instead, Defendants appear to concede that elements one and two are satisfied. For this reason, and this reason alone, the Court finds Plaintiff's trademark, Silent Skate, is entitled to the presumption of validity.

Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 211 (3d Cir. 2000)(internal citations omitted); see also Lorillard Techs, Inc. v. NJ Ale House, L.C.C., No. 14-2044, 2015 U.S. Dist. LEXIS 31920, at *21 (D.N.J. Mar. 13, 2015).  The Third Circuit has established ten non-exhaustive factors when conducting a likelihood of confusion analysis.  Interpace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983).  However, the Third Circuit noted that when the trademark holder and the alleged infringer have competing goods or services, the court will rarely need to "look beyond the mark itself."  Id. at 462.  In addition, the Third Circuit has also "repeatedly insisted that the Lapp factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision."  A&H Sportswear, 237 F.3d at 210.

Moreover, the Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff.  Opticians, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently"); see also U.S. Jaycees v. Phila. Jaycees, 639 F.2d 134, 142 (3d Cir. 1981) (holding that a "great likelihood of confusion [exists] when an infringer uses the exact trademark"); Tile, Inc. v. Blazing Prices, No. 20-05653, 2021 U.S. Dist. LEXIS 59328, *5-6 (D.N.J. Mar. 29, 2021) ("These devices bear Plaintiff's registered mark. That

6

alone is sufficient to establish a likelihood of confusion under the Lanham Act.").

Here, the Court need not conduct a detailed analysis under each Lapp factor because Plaintiff sufficiently contends Defendants' advertisements uses Plaintiff's exact trademark, which is likely to cause consumer confusion. See U.S. Jaycees, 639 F.2d at 142 ("there is great likelihood of confusion when an infringer uses the exact trademark"); Opticians, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently").

The issue of confusion is further demonstrated through the USPTO's own rejection of Defendant Live Life's trademark application for the mark Silent Sk8 because of the likelihood of confusion between Silent Sk8 and Plaintiff's Silent Skate trademark. (Plaintiff's Brief in support of preliminary injunction, [Dkt. Nos. 56-1, 56-2]). In assessing Live Life's trademark application for the mark Silent Sk8, USPTO compared the two marks. The USPTO found "applicant's mark, SILENT SK8, sounds the same and has the same meaning as registrant's mark, SILENT SKATE, creating a confusingly similar overall commercial impression between the marks." (USPTO Final Office Action, [Dkt. No. 71-16], at 5).

The USPTO further explained "The marks are essentially phonetic equivalents and thus sound similar" and recognized that "[s]imilarity in sound alone may be sufficient to support a

finding that the compared marks are confusingly similar." Id. The USPTO found that the misspelling of the word skate to sk8 did not "significantly alter the shared overall commercial impression between the marks[,]" and, therefore, "consumers encountering applicant's mark in the marketplace will immediately understand the mark to mean SILENT SKATE, and will assume there is a connection between applicant's and registrant's marks." Id.

The USPTO next compared Plaintiff and Defendant Live Life's services. Defendant Live Life's application explained that the mark Silent SK8 was for "providing skating rinks; Hosting social entertainment events, namely, skating events, for others; Hosting social entertainment events, namely, silent skating events, for others." Id. at 4. Similarly, Plaintiff's application, which was granted by the USPTO, explained that the mark Silent Skate was for "Arranging, organizing, conducting, and hosting social entertainment events; Hosting social entertainment events, namely, skating events, for others." Id. The USPTO found that the services of the companies were "highly related and partially overlapping" and thus "legally identical," making the services "related for likelihood of confusion purposes." Id. at 5. The USPTO concluded that "[b]ecause the marks are similar and the services are related, it is likely that consumers would believe that the services emanate from a common source." Id. at 6.

8

The Court finds the USPTO's findings regarding the use of Silent Sk8, while not binding, nonetheless persuasive as to why Defendants' use of the phrase Silent Skate in their advertisement, the exact wording of Plaintiff's trademark, is highly likely to cause consumer confusion.  This conclusion is further buttressed by Plaintiff's evidence that there has been actual consumer confusion because of Defendants' use of the phrase Silent Skate.  (See, e.g., Plaintiff's Exhibits regarding customer confusion, [Dkt. Nos. 68, 68-1, 68-2, 68-3, 68-4, 68-5, 68-6, 68-7, 68-8, 68-9, 68-10, 68-11, and 68-12]).  For the foregoing reasons, the Court finds Plaintiff has demonstrated a likelihood of success on the merits of her trademark infringement claim.

**B. Irreparable Harm**

Previously, the Third Circuit had held irreparable injury is presumed in trademark infringement actions. KOS Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708-09 (3d Cir. 2004) ("Trademark infringement amounts to irreparable injury as a matter of law.").  "However, in light of eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), the Third Circuit reworked its position to hold no presumption of irreparable harm is afforded to parties seeking injunctive relief in Lanham Act cases." Hit Doctor Tri State Arsenal LLC v. Barth, No. 19-14579, 2020 WL 729152, at *6 (D.N.J. Feb. 11, 2020)(citing Ferring Pharms.,

9

Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014); Buzz Bee Toys, Inc. v. Swimways Corp., 20 F. Supp. 3d 483, 511-12 (D.N.J. 2014) ("[A]fter eBay, irreparable harm must be established as a separate element, regardless of whether a plaintiff has shown infringement.")).

As concerns the irreparable harm factor, Plaintiff must demonstrate that she will, in the absence of an injunction, "experience [immediate] harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 484-85 (3d Cir. 2000) (citation omitted); Goadby v. Phila. Elec. Co., 639 F.2d 117, 121 (3d Cir. 1981) (noting that irreparable harm only exists when "damages are difficult to ascertain or are inadequate"). In other words, irreparable harm only exists in the event the injury is "of a peculiar nature, [such] that compensation in money cannot [alone] atone for it," Goadby, 639 F.2d at 121, or where monetary damages would be inadequate or exceedingly difficult to ascertain. In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1146 (3d Cir. 1982). A purely economic injury, compensable in money, by contrast, fails to satisfy the irreparable injury requirement. See Morton v. Beyer, 822 F.2d 364, 371-72 (3d Cir. 1987); see also Bennington Foods LLC v. St. Croix Renaissance Grp., LLP, 528 F.3d 176, 178-79 (3d Cir. 2008) (holding harm that can be repaired through monetary damages is not irreparable). However, "[g]rounds for

finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will." <u>Opticians Ass'c of Am. v. Indep. Opticians of Am.</u>, 920 F.2d 198, 195 (3d Cir. 1990).  "A finding of irreparable injury can also be based on likely confusion." <u>Id</u>. at 196.

Defendants incorrectly cite old case law, which held there is a presumption of irreparable harm once the Court has established a likelihood of confusion between the two marks at issue.  As detailed above, this presumption is no longer good law and instead Plaintiff bears the burden of demonstrating irreparable harm because of the trademark infringement.  Putting that issue aside, Defendants further claim Plaintiff cannot satisfy this element because her "papers are void of any mention of any sort of harm, let alone irreparable harm."  (Opp. Br., [Dkt. No. 63], at 3).

In response, Plaintiff argues that she has satisfied this requirement as she can "no longer continue to co-author a book called Evolution of Skating" because her collaborator "had concerns on how Live Life Headphones LLC Silent Sk8 product and services is different from my Silent Skate product and services."  Plaintiff's Reply Brief, [Dkt. No. 65-13]. Plaintiff further explains that questioning of Defendants' use of her trademark by customers and business associates is "humiliating and shameful" and has caused confusion. Plaintiff's Reply Brief, [Dkt. No. 65-14].  In support of her

11


claims of shame, humiliation, and confusion Plaintiff has put forth multiple exhibits demonstrating actual customer confusion and frustration over Plaintiff's "Silent Skate" mark and Defendants' conduct of promoting events and ticket sales to events with the phrase "Silent Skate".  See Plaintiff's Exhibits regarding confusion and reputation, [Dkt. Nos. 68-1 to 68-12]. Plaintiff thus argues she has suffered both tangible and intangible harms, including losses to good will, reputation, opportunities, and sales.

On this record, the Court finds Plaintiff's allegations are sufficient to demonstrate irreparable harm.  Defendants acted without impunity, routinely promoting and conducting events marketed as "Silent Skate," despite knowledge of Plaintiff's trademark and her repeated requests that they cease and desist the allegedly infringing conduct.  As presented in various emails, text messages, and other communications, Defendants' conduct has caused actual customer confusion and damage to Plaintiff.  Since confusion itself, between the Plaintiff's trademark and Defendants' misuse, goes to the issues of Plaintiff's reputation and others' good will, which can be otherwise virtually impossible to capture in terms of monetary relief, there is adequate grounds to find irreparable harm. See, e.g. Opticians Ass'n of Am., 920 F.2d at 195; Astrazeneca AB v. Camber Pharms., Inc., 2015 WL 7307101, at *5 (D. Del. Nov. 15, 2015) (quoting Kos Pharms., Inc. v. Andrx Corp., 369 F.3d

700, 726 (3d Cir. 2004)) ("'Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will,' intangible harms for which 'it is virtually impossible to ascertain the precise economic consequences'").

Moreover, not only does Plaintiff allege that this confusion injured her reputation and good will among customers, but she also has suffered a trade loss in the form of a book deal.  This lost opportunity is the result of the confusion created by Defendants' "Silent Sk8 product" and promotion of silent skating events.  While the loss of a book deal may be misconstrued as a merely economic opportunity, and the Court notes such a loss may be difficult to calculate, the Court finds the loss of a book deal in this case includes certain intangibles beyond monetary harm.  This lost business opportunity includes damage to Plaintiff's reputation as well as the loss of potential publicity and exposure from the book.  Accordingly, Defendants' acts diluted Plaintiff's trademark by causing confusion and other intangible losses.  Plaintiff therefore demonstrates a clear likelihood of irreparable harm satisfying the second element for injunctive relief.  Finding a reasonable likelihood of success on the merits and irreparable harm, the Court addresses the remaining elements for a preliminary injunction.

### C. Remaining Elements for a Preliminary Injunction

### 1. Balance of Hardships

As to balancing the hardships to the parties, this prong is designed "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." Opticians Ass'n of Am., 920 F.2d at 197.  Thus, "[a]n injunction should not be granted if its impact on the enjoined party would be more severe than the injury the moving party would suffer if it is not granted." Litton Sys., Inc. v. Sundstrand Corp., 750 F. 2d 952, 959 (Fed. Cir. 1984).

"[T]he balance [of hardships] weighs strongly in favor of [an injunction] where all that is requested is that Defendant comply with the [law and abstain from infringing]." Warner Bros. Records Inc. v. Walker, 704 F.Supp.2d 460, 469 (W.D. Pa. 2010) (second and third alterations in original) (quoting Lava Records, LLC v. Ates, No. 05-1314, 2006 WL 1914166, at *4 (W.D. La. July 11, 2006)).  In striking a balance of the hardships, court should also be mindful of the relative sizes of the parties.  Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 708 (Fed. Cir. 1997).

A primary question of this element is whether, and to what extent, Defendants will suffer irreparable harm if injunctive relief is granted.  Such irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it." Kos Pharms., 369 F.3d at 727.  As noted by the Third Circuit in this regard, "[i]njury to goodwill does not

14

constitute irreparable harm . . . . But, when the potential harm to each party is weighed, a party 'can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issurance of the injunction upon itself.'" Id. at 728 (quoting Novartis Consumer Health, Inc. v. Johnson & Johnson – Merck Consumer Pharm. Co., 290 F.3d 578, 596 (3d Cir. 1983)).

Defendants claim the equities favor denial of injunctive relief because they "are not using [Plaintiff's] mark", "there is no likelihood of confusion", and Plaintiff cannot establish irreparable harm. Citing no legal authorities or facts, Defendants further argue Plaintiff is free to host her own silent skating parties at any time, whereas, if the injunction is granted, then Defendants will be irreparably injured because "they would need to change their entire business model" (which, by their account is a "skating" rink and a "silent" disco company). Arguing semantics, Defendants claim "silent" and "skate" are "commonly used words" that hold independent definitions to Plaintiff's trademark. Finally, Defendants claim it would be unjust to prevent them from using the phrase "silent skate" since "many other individuals, organizers, and companies are using the same words to advertise the same types of events without limitation."

In response, Plaintiff correctly contends that Defendants are unquestionably using her mark, causing confusion to customers and her business associates, and they are misstating

15

the relative hardships. Plaintiff notes that Defendant Live Life is a headphone rental business that until 2018 was not involved in silent skating events. Likewise, Plaintiff argues Defendant Cascade is far more than a mere silent skating event space. She notes Cascade is a "World Famous", celebrated skating rink (a "monument in the skate world") that has appeared in the movie ATL and has successfully operated for over a decade prior to holding silent skating events. Thus, Plaintiff argues injunctive relief would not challenge Defendants' businesses' ability to successfully operate (as they did before she brought the silent skate idea to them) since silent skating events are not fundamental to their business models.

The Court finds a balance of the hardships weighs in favor of granting a preliminary injunction since the only harm is precluding, at least temporarily, Defendants from infringing upon Plaintiff's mark.[2] Unlike Plaintiff, who is proceeding *pro se* and *in forma pauperis*, Defendants are established, and in the case of Cascade, successful businesses, that have failed to demonstrate how silent skating events are essential to or at the

---

[2] "One of the goals of the preliminary injunction analysis is to maintain the status quo, defined as 'the last, peaceable, noncontested status of the parties.'" Opticians Ass'n of Am., 920 F.2d at 197 (citation omitted) (first citing Arthur Guinness & Sons, PLC v. Sterling Pub. Co., 732 F.2d 1095, 1099, 1101-02 (2d Cir. 1984); and then quoting 2 J. McCarthy, Trademarks and Unfair Competition § 30:19 (2d ed. 1984)). The Court finds the requested relief merely returns the parties to the status quo prior to the alleged infringements of Plaintiff's mark.

core of their business models such that an injunction would cause irreparable harm. As concerns Defendants' other protestations, and as noted above, the Court finds there is a likelihood of success that Defendants are knowingly infringing upon Plaintiff's mark, thereby causing confusion. Injunctive relief should come as no surprise here as Defendants were fully aware that Plaintiff would seek judicial relief since she made repeated demands to cease their continuing use of her "Silent Skate" mark. In the absence of an injunction, nothing prevents Defendant from further acts of infringement.

Thus, the Court finds that the balance of the hardships favors an injunction. Plaintiff continues to suffer the harms, and the threat of harm, as outlined under the irreparable injury analysis. Defendants have failed to identify any specific harm, let alone an economic harm, that would follow from permitting Plaintiff's application to proceed.

### 2. Public Interest

The Third Circuit instructs that "the most basic public interest at stake in all Lanham Act cases [is]: the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy. We have often recognized that '[p]ublic interest . . . in a trademark case is . . . most often a synonym for the right of the public not to be deceived or confused.'" Kos Pharms., Inc., 369 F.3d at 730 (quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 807 (3d

17

Cir 1998)). Accordingly, as this Court finds there is a likelihood of confusion[3] created by Defendants' use of the phrase "Silent Skate," which is the exact wording of Plaintiff's trademark, "'it follows that if such use continues, the public interest would be damaged. Conversely, a prohibition upon [Defendants'] use of [Plaintiff's] mark would eliminate that confusion.'" Kos Pharms., Inc., 369 F.3d at 730 (quoting Opticians, 920 F.2d at 198). The Court finds this element is easily satisfied.

### 3. The Bond Requirement

"Generally, a bond is a condition of preliminary injunctive relief." Sprint Commc'ns. Co. L.P. v. CAT Commc'n Int'l., Inc., 335 F.3d 235, 239 (3d Cir. 2003). Federal Rule of Civil Procedure 65(c) states that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c). While, the posting of a bond is rarely discretionary, "[t]he amount of the bond is left to the

---

[3] Defendants' public interest argument centers on the issue of confusion, claiming there is no deception or confusion present in the record. Plaintiff disagrees, arguing that confusion is plainly presented. The Court agrees. As explained above, Defendants' acts caused confusion; thus the Court rejects Defendants' claim that "there is no likelihood of confusion created by the Defendants."

discretion of court." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 210 (3d Cir. 1990).

Here, the Court finds that security in the amount of $1,000 deposited with the Clerk of the Court satisfies Rule 65(c) on the present record. Central to the Court's decision is Defendants' representation that they are not using the infringing mark. See Opp. Br., [Dkt. No. 63], at 3) ("Defendants are not using the mark that plaintiff is alleging that the Defendants are using"). Thus, it stands to reason Defendants will not suffer harm if the Court enjoins them from activities they already abstain from. Moreover, as discussed above, Defendants' argument that injunctive relief might somehow disrupt their business models is unsupported in the record as they have made no specific showing of harm, let alone economic harm. Nothing in this opinion precludes Defendants from promoting and hosting entertainment events in which participants roller skate and listen to music through headphones. What Defendants may not do is use Plaintiff's federally protected mark, or something confusingly similar, in doing so.

In contrast and as detailed above, Plaintiff seeks to enforce an important public interest, namely, to protect her trademark and the public's interest in avoiding confusion. Plaintiff is proceeding *pro se* and *in forma pauperis* and is therefore of limited financial means. There is, therefore, some concern that setting a bond amount untethered to any economic

19

risk to Defendants occasioned by the awarding of a preliminary injunction will be nothing less than a Pyrrhic victory for Plaintiff denying her her statutory rights under the Lanham Act.

On the other hand, Plaintiff maintains a commercial enterprise and this action is, in the end, intended to preserve whatever economic value the disputed mark represents. Some amount of security is required and equitable and the Court has endeavored to set that amount on the record before it. If Defendants believe, however, despite their stated disavowal to use the disputed mark, that the bond amount is too low they may petition the Court for additional security at any time before trial on the merits of Plaintiff's claims. Any such application must articulate with specificity the non-speculative economic harm caused by the injunction.

## **CONCLUSION**

As the Court finds a reasonable likelihood of success on the merits of the trademark infringement claim and the other elements for a preliminary injunction to be satisfied, the Court will grant Plaintiff's Motion for Preliminary Injunction.

An appropriate Order will be entered.

Date: March 20, 2022           s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.