**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DELLISA RICHARDSON,<br><br>        Plaintiff,<br><br>   v.<br><br>CASCADE SKATING RINK and LIVE LIFE HEADPHONES LLC,<br><br>        Defendants. | Civ. No. 19-8935-NLH-MJS<br><br>**OPINION** |

**APPEARANCES:**

DELLISA RICHARDSON
1510 CHESTNUT LANE
WESTVILLE, NJ 08093

   *Plaintiff appearing pro se*

CHRISTOPHER D. WARREN
WARREN LAW GROUP
112 W. 34TH STREET - 17TH FLOOR
NEW YORK, NY 10120

   *On behalf of Defendants Cascade Skating Rink and Live Life Headphones LLC*

**HILLMAN, District Judge**

    This matter comes before the Court by way of a motion to dismiss, [Docket Number 77], filed by Defendants Cascade Skating Rink ("Cascade") and Live Life Headphones LLC ("Live Life") (collectively "Defendants"), pursuant to Federal Rule of Civil

Procedure 12(c). <u>Pro se</u> Plaintiff Dellisa Richardson opposes the motion. <u>See</u> Plaintiff's Response in Opposition ("Opp. Br.") [Dkt. No. 89]. The Court has considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Defendants' motion will be denied.

## BACKGROUND

The facts and procedural history of this case are well-known to the parties and were previously described in the Court's December 15, 2020 Opinion [Dkt. No. 15], April 6, 2021 Opinion [Dkt. No. 28], and March 21, 2022 Opinion [Dkt. No. 98]. Accordingly, the Court adopts that background and will not restate the full history here.

Plaintiff claims to be the owner and inventor of the "Silent Skate business method concept." Amended Complaint [Dkt. No. 17]. As detailed by the parties, Silent Skate is a roller-skating service/event during which customers roller-skate while listening to curated music on wireless headphones. Plaintiff avers that Defendants partnered to host similar if not identical Silent Skating events, going so far as to market and promote their events as "Silent Skate." On June 12, 2018, Plaintiff contacted Defendants via email, claiming their use of the phrase "Silent Skate" infringed on her trademark.

On October 2, 2018, Plaintiff filed a trademark application to register the word mark "Silent Skate" with the United States Patent and Trademark Office ("USPTO"). As defined under the USPTO's "Goods and Services" description of the mark, Silent Skate encompasses "Arranging, organizing, conducting, and hosting social entertainment events; Hosting social entertainment events, namely, skating events, for others." Review of the USPTO's Trademark Electronic Search System ("TESS") shows that Plaintiff's mark was first in use as of December 7, 2015, and it was first used in commerce on May 6, 2016. The mark was federally registered on March 12, 2019.

On March 25, 2019, Plaintiff filed the initial Complaint [Dkt. No. 1] against Cascade and Live Life, claiming Defendants infringed on her "Silent Skate" trademark. Specifically, Plaintiff claims Defendants infringed on her mark by holding events that included the mark and or similar terms. She avers that Defendants were notified of the trademark and that their infringing activities confused her customers. She seeks to recover "all of the profit" Defendants made from the infringing events, as well as "court costs, time spent off work, and pain and suffering." Complaint [Dkt. No. 1].

On January 4, 2021, Plaintiff filed an Amended Complaint, claiming Defendants infringed on her mark on at least nineteen separate occasions, noting the following dates: November 8,

2018; December 13, 2018; January 10, 2019; February 21, 2019; March 21, 2019; April 25, 2019; July 18, 2019; August 22, 2019; September 19, 2019; December 26, 2019; February 20, 2020; April 2, 2020; July 28, 2020; August 20, 2020; September 17, 2020; October 22, 2020; November 19, 2020; December 24, 2020; and January 21, 2021. Amended Complaint [Dkt. No. 17]. Plaintiff claims Defendants' infringing activities have caused her to lose business opportunities "because my customers no longer travel to my Silent-Skate events nor do they no longer [sic] hire me to host Silent Skate events in Georgia," as well as lost goodwill, damage to her reputation, dilution of her mark, emotional distress, and pain and suffering. Id. at 4. In total, she requests damages of $1,003,241.00 plus costs. Ibid.

On October 19, 2021, Defendants filed the instant motion to dismiss, moving for judgment on the pleadings pursuant to Rule 12(c). Plaintiff filed opposition to the motion on December 30, 2021, and Defendants filed their reply on January 14, 2022.[1] The motion is therefore ripe for adjudication.

---

[1] Plaintiff filed what appears to be a sur-reply [Dkt. No. 94], without leave of court to do so, which Defendants ask the Court to disregard. Although acting *pro se*, Plaintiff still has an obligation to abide by the rules of court. Local Civil Rule 7.1(d)(6) provides that "[n]o sur-replies are permitted without permission of the Judge ... to whom the case is assigned." Plaintiff did not seek leave before filing her sur-reply. To that extent, Defendants are correct. Accordingly, the Court typically will not consider sur-replies that parties have filed without seeking and receiving leave to do so. However, in light

**DISCUSSION**

**A.   Subject Matter Jurisdiction**

Plaintiff brings this action for trademark infringement, asserting federal question jurisdiction. This Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**B.   Legal Standard of a Motion for Motion to Dismiss and Judgment on the Pleadings**

A motion for judgment on the pleadings is governed by Rule 12(c). Ellaisy v. City of Atl. City, 2021 WL 4473139, at *2 n.4 (D.N.J. Sept. 20, 2021). The Rule provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In analyzing a Rule 12(c) motion, the Court applies the same legal standards as applicable to a motion file pursuant to Rule 12(b)(6). Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). Therefore, in assessing a motion for judgment on the pleadings, the Court analysis proceeds in the same manner as it would for a motion to dismiss based on Rule 12(b)(6).

---

of Plaintiff's *pro se* status, adopting such a position would be inappropriate. Therefore, because Plaintiff is proceeding *pro se* in this action, the Court shall liberally construe her submissions to afford both parties the benefit of their complete advocacy in this matter. Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011). Nonetheless, Plaintiff is forewarned of the need to comport with the Local Civil Rules, as the Court will not consider any future, improperly filed sur-replies.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all well-plead allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005). It is well-established that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to the relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). To determine the sufficiency of a complaint, the Court must take three steps: (1) the Court must take not of the elements a plaintiff must plead to state a claim; (2) the Court should identify the allegations that, because they are no more than legal conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the Court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

6

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009) (alterations, quotations, and other citations omitted).

In weighing a motion to dismiss, the Court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' ...."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal ... provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

7

based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

Applying the above standard to the instant record, the Court is left to conclude that Plaintiff presents sufficient facts to state a claim for relief that is plausible on its face.

**C.   Analysis**

Plaintiff's sole claim is for trademark infringement, thus narrowing the Court's analysis to whether Plaintiff states a claim for trademark infringement under the Lanham Act.

"Congress enacted the Lanham Act in 1946 in order to provide a national protection for trademarks used in interstate and foreign commerce." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 193 (1985). The Lanham Act, 15 U.S.C. §§ 1051, et seq., "was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in ... commerce against unfair competition.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127). Specifically, the Lanham Act provides that:

> Any person who shall, without the consent of
> the registrant[,] use in commerce any
> reproduction, counterfeit, copy, or

> colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant ....

15 U.S.C. § 1114(1).

As noted previously by this Court, to state a claim for trademark infringement, the plaintiff must allege three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). Applying this analysis to the instant record and in light of the Court's March 30, 2022 Opinion,[2] Plaintiff plainly states a claim of trademark infringement.

As stated previously, there is no dispute among the parties that Plaintiff satisfies the first two elements. Plaintiff owns and registered the mark Silent Skate with the USPTO. Likewise, Plaintiff satisfies the third element, as the Court found Defendants' use of the mark creates a likelihood of confusion:

> Here, the Court need not conduct a detailed analysis under each Lapp factor because Plaintiff sufficiently contends Defendants' advertisements use Plaintiff's exact

---

[2] Although the Court will not restate its March 30, 2022 Opinion in full, the findings detailed therein directly bear upon the Court's ruling on the instant motion.

9

trademark, which is likely to cause consumer confusion. See U.S. Jaycees, 639 F.2d at 142 ("there is great likelihood of confusion when an infringer uses the exact trademark"); Opticians, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently").

The issue of confusion is further demonstrated through the USPTO's own rejection of Defendant Live Life's trademark application for the mark Silent Sk8 because of the likelihood of confusion between Silent Sk8 and Plaintiff's Silent Skate trademark. (Plaintiff's Brief in support of preliminary injunction, [Dkt. Nos. 56-1, 56-2]). In assessing Live Life's trademark application for the mark Silent Sk8, USPTO compared the two marks. The USPTO found "applicant's mark, SILENT SK8, sounds the same and has the same meaning as registrant's mark, SILENT SKATE, creating a confusingly similar overall commercial impression between the marks." (USPTO Final Office Action, [Dkt. No. 71-16], at 5).

....

The Court finds the USPTO's findings regarding the use of Silent Sk8, while not binding, nonetheless persuasive as to why Defendants' use of the phrase Silent Skate in their advertisement, the exact wording of Plaintiff's trademark, is highly likely to cause consumer confusion. This conclusion is further buttressed by Plaintiff's evidence that there has been actual consumer confusion because of Defendants' use of the phrase Silent Skate. (See, e.g., Plaintiff's Exhibits regarding customer confusion, [Dkt. Nos. 68, 68-1, 68-2, 68-3, 68-4, 68-5, 68-6, 68-7, 68-8, 68-9, 68-10, 68-11, and 68-12]). For the foregoing reasons, the Court finds Plaintiff has demonstrated a likelihood of success on the merits of her trademark infringement claim.

March 30, 2022 Opinion, [Dkt. No. 98], at 7-9. In sum, the Court has already determined that Plaintiff states a claim for trademark infringement based on the Court's analysis of her likelihood of success on the merits in addressing the motion for a preliminary injunction. Nonetheless, the Court will address Defendants' remaining arguments.

Defendants aver dismissal of the trademark infringement claim is appropriate because Plaintiff's trademark is nothing more than a generic term. However, this argument, like the prior issue of the likelihood of confusion, was previously addressed by the Court in its March 30, 2022 Opinion:

> The Court notes Defendants' fifth affirmative defense is for "Generic Use." Defendants argue "[t]he allegations made in the Amended Complaint are barred, in whole or in part, because the alleged marks at issue are generic." Defendants' Answer to the Amended Complaint, [Dkt. No. 39], at 4.  The Court recognizes that registration serves as <u>prima facie</u> evidence of the validity of a mark, meaning that Plaintiff "is entitled to a strong prima facie presumption that its registered mark is either not merely descriptive or if descriptive, that secondary meaning is presumed, which amounts to the same thing." <u>Koninkijke Philips Elecs. N.V. v. Hunt Control Sys.</u>, 2016 U.S. Dist. LEXIS 84299, at *50 (D.N.J. June 29, 2016)(citing 15 U.S.C. § 1115(a); 2 <u>McCarthy on Trademarks</u> § 11:43.). However, this is a rebuttable presumption. <u>J & J Snack Foods, Corp. v. Nestle USA, Inc.</u>, 149 F. Supp. 2d 136, 145 (D.N.J. June 27, 2001)("If plaintiff has a federal registration, then there is a strong presumption that the term is not generic, and

11

> a defendant must overcome that presumption."). Here, despite Defendants' affirmative defense regarding generic use, Defendants fail to advance any argument in opposition to Plaintiff's Motion for Preliminary Injunction that Plaintiff cannot satisfy the first element because the trademark, Silent Skate, is merely descriptive of the Plaintiff's services. Instead, Defendants appear to concede that elements one and two are satisfied. For this reason, and this reason alone, the Court finds Plaintiff's trademark, Silent Skate, is entitled to the presumption of validity.

March 30, 2022 Opinion, [Dkt. No. 98], at 5 n.1. Thus, the Court adopts and reiterates its prior stance on the argument that the mark is generic. That said, the Court is not ruling that Defendant is incapable of proving that the mark is generic. Rather, such an argument is better addressed under a more fully developed record and under a standard that does not presume the allegations in the complaint as true and views them in the light most favorable to the plaintiff.

Next, Defendants argue that some of Plaintiff's demands for damages should be dismissed as they are not recoverable under the Lanham Act. Specifically, and citing no supporting cases, Defendants claim pain and suffering as well as emotional distress are not recoverable under the Lanham Act. Looking to Plaintiff's Amended Complaint, she clearly requests relief in the form of:

> [A]ll of the proceeds for every Silent Skate and/or similar events. $50 admission x 1200

12

> capacity for 12 events. $20 admission x 600 half of capacity for 6 pandemic let out dates. Emotional distress, pain and suffering, lost [sic] of work, reputational damage, monies spent on case, court cost, attorney assettance [sic] fees, interest, and such other relief as the court deems proper. Including any assets. I have a claim and ask for $1,003,241 plus cost.

Amended Complaint, [Dkt. No. 17], at 6.

Pursuant to the Lanham Act, a trademark owner may choose to recover either "any damages sustained by the Plaintiff," meaning actual, or, in the alternative, statutory damages. See 15 U.S.C. § 1117(a), (c). Thus, the Lanham Act affords two alternate paths for calculating damages: "either an award subject to principles of equity that turns on evidence of the defendant's sales and profits, or, alternatively, statutory damages of between $1,000 and $2 million per counterfeit mark for each type of good or service offered for sale or distributed, as the court considers just[.]" Covertech Fabricating, Inc. v. TVM Building Products, Inc., 855 F.3d 163, 176 (3d Cir. 2017) (citing 15 U.S.C. § 1117). Ultimately, the choice between the two award schemes is at the plaintiff's election, and the district court is afforded wide discretion in applying equitable principles. Ibid. Additionally, under subsection (b) of § 1117:

> [T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, ...

13

>together with a reasonable attorneys' fee, if the violation consists of ... intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, ... in connection with the sale, offering for sale, or distribution of goods or services.[]

Accordingly, although Plaintiff's requested relief is inartfully explained, the Amended Complaint seeks damages for reputational harm, lost profits, loss of business, as well as litigation costs – all of which are recoverable under the Lanham Act. The Court interprets Plaintiff's averments of pain, suffering, and emotional distress as merely a colorful description of her claims of reputational harm and lost business opportunities. While the Court could make a determination about the availability of damages if Plaintiff were to prevail at trial, the Court reserves decision on that issue so that it may better put in context the claims and evidence after having the benefit of a full record.

Lastly, Defendants attempt to invoke the defense of fair use as a basis for dismissal. "Fair use is an affirmative defense to a copyright infringement claim, and the proponent carries the burden of proof in demonstrating fair use." Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552, 569-70 (D.N.J. 2002) (citing Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994)). Here, even if assuming that fair use principles are applicable in a trademark

14

case, Defendants raise the defense in passing with two paltry paragraphs, thus failing to carry their burden of demonstrating the defense to the Court's satisfaction. Moreover, as noted above in the standard of review, and as was noted by this Court in Video Pipeline, motions to dismiss do not exist to attack the merits of the complaint's claims but are instead utilized merely to test a complaint's legal sufficiency. Id. at 570; see also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Accordingly, because the Court's focus at this stage in the proceedings is to test the sufficiency of the Amended Complaint by viewing the allegations in the light most favorable to the Plaintiff, the affirmative defense of fair use will not be considered on the merits at this time.

Defendants remaining arguments are without sufficient merit to warrant further consideration by this Court.[3]

## CONCLUSION

For the foregoing reasons, Defendant's motion will be denied.  An appropriate Order will follow.

---

[3] In particular, Defendants' reference to a "patent cause of action" is irrelevant. This action only concerns a claim for trademark infringement. Although Plaintiff's Amended Complaint references a "patent status," this merely reflects the *pro se* Plaintiff's inartful description of her trademark Silent Skate filed with the Patent and Trademark Office and should not be confused with anything beyond the alleged trademark infringement.

```
Date: June 28, 2022           s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.
```