UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DELLISA RICHARDSON,**<br><br>    Plaintiff,<br><br>v.<br><br>**CASCADE SKATING RINK and LIVE LIFE HEADPHONES LLC**<br><br>    Defendants. | Case No. 19–08935-ESK-EAP<br><br>OPINION |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on *pro se*[1] plaintiff Dellisa Richardson's motion for summary judgment (ECF No. 183 (Pl.'s Mot. Summ. J.)) and defendants Cascade Skating Rink (Cascade) and Live Life Headphones, LLC's (Live Life) cross-motions for summary judgment (ECF Nos. 188, 191). Plaintiff filed a reply. (ECF No. 193 (Pl.'s Reply Br.)) I ordered the parties to supplement their briefing with responses to each other's statements of material facts (ECF No. 204), which the parties provided (ECF No. 206, ECF No. 207 (Pl.'s Resp. Facts), ECF No. 208). For the reasons that follow, plaintiff's motion will be DENIED and defendants' operative cross-motion will be GRANTED.

---

[1] Plaintiff moved for appointment of *pro bono* counsel in November 2021. (ECF Nos. 78, 79.) Magistrate Judge Matthew J. Skahill denied the motion without prejudice. (ECF No. 101 pp. 2–8.) Nonetheless, the docket indicates that plaintiff was briefly represented by David Michael White of Seton Hall University School of Law's Conflict Management Program. (ECF Nos. 131, 136, 139.) Plaintiff was also represented *pro bono* by Jay DiMarino for the limited purpose of consultation during settlement discussions. (ECF No. 148.)

Defendants' duplicative cross-motion at ECF No. 188[2] will be administratively terminated as moot.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff owns the trademark "SILENT SKATE," listed on the United States Patent and Trademark Office (USPTO) Supplemental Register under Registration Number 5,699,688. (ECF No. 191–6 (Defs.' Ex. A) p. 2.) The mark, registered on March 12, 2019, indicates that it was first used on December 7, 2015 and first used in commerce on May 6, 2016. (*Id.*) It relates to "[a]rranging, organizing, conducting, and hosting social entertainment events; Hosting social entertainment events, namely, skating events, for others." (*Id.*) The mark disclaims exclusive right to use the term "SKATE." (*Id.*) Silent skating refers to events in which participants roller skate while wearing headphones and are able to flip through three different music options. (ECF No. 191–10 (Defs.' Ex. D) p. 23:5–15.)

Plaintiff has at times included her nickname, "Peachie," while using her mark in commerce and has not regularly included trademark symbols or otherwise indicated that SILENT SKATE is trademarked. (ECF No. 191–7.) Plaintiff has spent approximately $3,500 on expenses related to her mark and does not have a monthly marketing budget. (Defs.' Ex. D pp. 116:17–19, 122:8–9.) She has never licensed her mark for a fee. (*Id.* pp. 122:16 to 123:4.) Plaintiff estimated that she averaged a net profit of between $20,000 and $25,000 per year prior to the pandemic in 2020, at which time her net profit dropped to $0. (*Id.* pp. 89:9 to 90:5) She has policed her mark, sending

---

[2] Following defendants' filing of their cross-motion docketed at ECF No. 188, District Judge Noel L. Hillman (Ret.) noted that it was purportedly filed by defense counsel Christopher Warren, who had previously withdrawn. (ECF No. 189.) Judge Hillman ordered active counsel to file a substitute motion on behalf of defendants (*id.*), resulting in ECF No. 191. The filings are virtually identical. Because I will grant the operative substitute cross-motion, I find that the cross-motion it replaced may be terminated.

approximately 12 to 15 cease-and-desist letters in an effort to avoid market confusion. (*Id.* pp. 95:6–9, 107:18–22.)

Cascade and Live Life are both based in Georgia. (ECF No. 191–11 (Defs.' Ex. E) pp. 2, 5.) The parties do not dispute that Cascade and Live Life have not hosted any relevant event outside of Georgia or South Carolina. (Pl.'s Resp. Facts p. 2.) Plaintiff hosted two or three silent skating events in Georgia between September 2016 and September 2017. (ECF No. 24 (Pl.'s Mot. Default J.) pp. 8–13.)[3] The record does not demonstrate that plaintiff has since hosted additional events in the region.

Plaintiff attended skating events hosted by Cascade. (ECF No. 187–1 (Pl.'s Mot. Ex.) pp. 9–12.) Following a "Silent Skate" hosted by Cascade and promoted by Live Life (*id.* p. 14), plaintiff alleges that she sent a cease-and-desist letter to Cascade and Live Life (Pl.'s Mot. Summ. J. p. 9). Though Juan Moore, an independent contractor who provides promotional services for Live Life, emailed plaintiff that her mark would not be used in the future, "Silent Skate" and "Silent Sk8" events continued to be held. (Pl.'s Mot. Ex. pp. 15–26.) Moore filed a declaration stating that he had not heard of plaintiff prior to her emailing him through a mutual acquaintance in June 2018. (Defs.' Ex. E p. 9.) Live Life's sole member, Jesse Robinson, asserts that he had not heard of plaintiff until Moore informed him of plaintiff's allegations in June 2018. (*Id.* p. 6.) Cascade owner Greg Alexander also filed a declaration stating that he had not heard of plaintiff prior to receipt of a cease-and-desist letter in April 2019. (*Id.* p. 2.)

---

[3] The parties dispute whether plaintiff hosted two or three events in Georgia, with defendants, citing the amended complaint, claiming that she has hosted two events while plaintiff claims that she hosted a third in March 2017. (Pl.'s Resp. Facts p. 2.) The social-media post from the March 2017 event does not indicate who hosted the event. (Pl.'s Mot. Default J. p. 13.) Ultimately, whether plaintiff hosted two or three events is not determinative for the forthcoming analysis.

Plaintiff has provided images of text messages indicating that she had a phone call scheduled with Moore to discuss potential business. (Pl.'s Mot. Ex. pp. 4–6.) However, Moore attests that plaintiff claimed that she had a patent for silent roller skating events and requested a fee in exchange for permission for Live Life to hold future events. (Defs.' Ex. E pp. 9, 10.) When Moore requested documentary support for plaintiff's claims, plaintiff provided a blurred-out USPTO notice and tax documents and nothing further. (*Id.*) Moore did not hear again from plaintiff until she sent a cease-and-desist letter to Cascade, which was forwarded to Live Life. (*Id.*)

Live Life applied for the trademark "SILENT SK8" and was rejected in a December 6, 2020 USPTO letter. (Defs.' Ex. A pp. 26–31, 43–49.) Reconsideration was denied. (ECF No. 207–1 pp. 1, 2.) Final refusal was premised, in part, on a likelihood of confusion with plaintiff's mark, including SILENT SKATE and SILENT SK8 having the same meaning, their "phonetic equivalen[cy]," and their related services. (Defs.' Ex. A pp. 44–46.) Refusal was also based on the examining attorney's conclusion that the applied-for mark was "merely descriptive." (*Id.* pp. 46–48.)

Plaintiff filed this action for trademark infringement on March 25, 2019. (ECF No. 1.) As amended,[4] she alleges that she was a customer of Cascade's for nearly 20 years and attended its annual Skate-A-Thon event, later joining the Skate-A-Thon team to host events in 2016 and 2017. (ECF No. 17 p. 4.)

---

[4] Plaintiff moved to amend on September 27, 2021 (ECF No. 75), which Judge Skahill denied (ECF Nos. 76, 84). Plaintiff nonetheless filed an amended complaint. (ECF No. 158.) I noted this unpermitted amended complaint, identified the amended complaint filed under ECF No. 17 as the operative pleading, and provided plaintiff 14 days to show cause why the filing under ECF No. 158 should not have been stricken from the docket. (ECF No. 199 (Mot. Strike Op.) p. 1 n. 2.) After consideration of plaintiff's response (ECF No. 203), I ordered that ECF No. 158 be stricken and clarified that the amended complaint under ECF No. 17 is the operative pleading. (ECF No. 204.)

4

Prior to a silent skating event hosted by Cascade in November 2018, plaintiff claims that she notified Cascade of her "patent status"[5] and emailed cease-and-desist letters. (*Id.*) Despite being assured by Moore that events would no longer be hosted using her mark, plaintiff claims that infringement continued—resulting in lost business and damaged reputation and goodwill. (*Id.* pp. 4, 5.) Plaintiff seeks damages in excess of $1 million. (*Id.* p. 6.)

Plaintiff moved for a preliminary injunction on August 6, 2021. (ECF No. 56.) Defendants moved for judgment on the pleadings on October 19, 2021. (ECF No. 77.) Judge Hillman granted plaintiff's motion for a preliminary injunction in a March 21, 2022 opinion and order. (ECF No. 98 (Prelim. Inj. Op.), ECF No. 99.) Judge Hillman concluded that plaintiff demonstrated a likelihood of success on the merits for her infringement action, focusing the analysis on the lone disputed element of the claim—likelihood of confusion. (Prelim. Inj. Op. pp. 4–9.) Judge Hillman later denied defendants' motion for judgment on the pleadings, finding that "the Court ha[d] already determined that [p]laintiff state[d] a claim for trademark infringement based on the Court's analysis of her likelihood of success on the merits in addressing the motion for a preliminary injunction." (ECF No. 103 (Mot. J. Pleadings Op.) p. 11, ECF No. 104.)

Plaintiff proceeded to file a motion to strike, a motion for judgment on the pleadings, and a motion for sanctions, the first and third motions related to the participation of Stephen Reich, *pro hac vice* counsel for defendants. (ECF Nos. 128, 144, 167.) Judge Hillman held a motion hearing on December 5, 2023 (ECF No. 181) and denied plaintiff's motion to strike as moot and recognized plaintiff's withdrawal of her motion for judgment on the pleadings. (ECF Nos. 185, 186).

---

[5] Plaintiff clarified in her motion brief that her only cause of action is trademark infringement and her reference to "patent status" was merely an "inartful description of her trademark." (Pl.'s Mot. Summ. J. p. 15.)

5

This case was reassigned to me following the parties' filing of motions for summary judgment. (ECF No. 197.) I denied plaintiff's still-pending motion for sanctions, concluding that plaintiff failed to establish that defendants violated the preliminary injunction and that any issues concerning Reich's representation were cured by Magistrate Judge Elizabeth A. Pascal's order admitting him *pro hac vice*. (Mot. Strike Op., ECF No. 200.)

## II. STANDARD AND PARTY ARGUMENTS

### A. Motions for Summary Judgment

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the suit under the governing law.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Facts and evidence are to be viewed in the light most favorable to the nonmovant. *Id.*

### B. Party Arguments

Defendants contend that plaintiff cannot meet her burden of showing that she owns a valid, protectable mark because her mark was filed on the Supplemental Register rather than the Principal Register and thus does not carry a presumption of validity. (ECF No. 191–2 (Defs.' Cross Mot. Br.) p. 8.) Marks that are generic are never protectable, according to defendants, and descriptive marks are only protectable if the mark has acquired a secondary meaning. (*Id.* pp. 9–11.) Defendants first argue that plaintiff's mark is generic because "silent" is a common term for events featuring three-channel headphones, plaintiff has not supported her position with consumer surveys or trade journals, and there is no genuine dispute that consumers identify

6

SILENT SKATE with the service rather than plaintiff's brand. (*Id.* pp. 11–15.) Alternatively, defendants claim that the mark is merely descriptive, relying—in part—on the USPTO's denial of Live Life's similar SILENT SK8 application. (*Id.* pp. 17–19.) Plaintiff's mark has not acquired a secondary meaning, according to defendants, citing plaintiff's inconsistent use of the mark, modest advertising budget, refusal to provide financial records, and failure to ever license the mark. (*Id.* pp. 20–28.) Finally, even if the mark is valid, defendants claim that they engaged in fair use. (*Id.* pp. 29–31.)

Registration of her mark is *prima facie* evidence of its validity, according to plaintiff, meaning that it is entitled to a strong presumption that it is not merely descriptive. (Pl.'s Mot. Summ. J. p. 14.) Defendants have hosted numerous events that have infringed on her mark, leading to lost business opportunities and reputational harms. (*Id.* pp. 16–18.) Plaintiff contends that SILENT SKATE is suggestive rather than descriptive because the two terms together suggest that the service is quiet when in fact the wireless headphones provide loud music. (Pl.'s Reply Br. p. 13.) SILENT SKATE "is considered suggestive and not descriptive because it is witty, unconventional, and requires imagination on the part of the reader," according to plaintiff. (*Id.*) Competitors' ability to use alternative language to describe their services further supports finding that her mark is suggestive, plaintiff claims. (*Id.* p. 15.)[6]

---

[6] Plaintiff dedicates a significant portion of her reply brief seeking to strike defendants' briefing and exhibits due to Reich's participation. (Pl.'s Reply Br.) Similar arguments were already addressed in my opinion and order denying plaintiff's motion for sanctions and they will not be revisited here.

## III. ANALYSIS

### A. Trademark Infringement and the Supplemental Register

"[T]o win a trademark claim, a plaintiff must establish that (1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 218 (3d Cir. 2021) (alteration in original) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). The issue before Judge Hillman at the injunction stage was the likelihood of confusion. (Prelim. Inj. Op. pp. 4, 5.) Here, defendants argue that, because plaintiff's mark appears on the Supplemental Register rather than the Principal Register, "it does not carry the presumptions of validity or ownership" and plaintiff cannot meet her burden of demonstrating that her mark is valid and protectable. (Defs.' Cross Mot. Br. p. 8.)

Registration of a mark on the Principal Register serves as *prima facie* evidence of the mark's validity, its owner's ownership, and the owner's exclusive right to use the mark in connection with the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a). Registration on the Supplemental Register is not accompanied by such advantages. 15 U.S.C. § 1094; *see also* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 19:36 (5th ed. 2024) ("In litigation where plaintiff has a Supplemental Registration, the mark will not, prima facie, receive protection as a valid trademark, for its very presence on the Supplemental Register indicates a preliminary determination that the mark is not distinctive of the applicant's goods.").

Though registration on the Supplemental Register "creates no substantive rights," the "mark may nonetheless be valid and legally protectable, notwithstanding its exclusion from the Principal Register, 'if the public

8

recognizes it as identifying the claimant's "goods or services and distinguishing them from those of others."'"  *Com. Bancorp, Inc. v. BankAtlantic*, 285 F. Supp. 2d 475, 484 (D.N.J. 2003) (quoting *Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.*, Case No. 99–00280, 1999 WL 707721, at *4 (D.N.J. Sept. 13, 1999) and then *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986)). The validity of a mark on the Supplemental Register "depends on proof of secondary meaning, unless the registered mark is inherently distinctive."  *See id.*

Courts determine the protectability of a mark by identifying its classification: 1) generic, 2) descriptive, 3) suggestive, or 4) arbitrary or fanciful. *See id.*  Suggestive, arbitrary, and fanciful terms are inherently distinctive and protectable.  *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 376 (D.N.J. 2002).  Generic terms receive no protection.  *Id.* at 375. "Descriptive terms only enjoy trademark protection if they have acquired a secondary meaning in the minds of the consuming public."  *Id.*

The classification of a term and whether it has acquired a secondary meaning are questions of fact.  *See E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008).  "However, mark classification, 'as with any question of fact[,] can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt about how the question should be answered'" and such questions are frequently resolved at summary judgment. *Engage Healthcare Commc'ns, LLC v. Intellisphere*, LLC, Case No. 12–00787, 2018 WL 10339218, at *6 (D.N.J. Nov. 29, 2018) (alteration in original) (quoting *interState Net Bank v. NetB@nk, Inc.*, 221 F. Supp. 2d 513, 516 (D.N.J. 2002)); *see also E.T. Browne Drug Co.*, 538 F.3d at 192 (affirming on alternative grounds and holding that, while evidence was sufficient to create a genuine issue of material fact as to whether the term was generic or descriptive, insufficient evidence was produced to create a genuine issue as to whether the

term acquired a secondary meaning). Because I conclude that no reasonable jury could conclude that the mark is inherently distinctive and entitled to protection, I will enter summary judgment in favor of defendants.

### B. Plaintiff's Mark is No More Than Descriptive

The parties dispute the characterization of SILENT SKATE, with plaintiff asserting that the term is suggestive and therefore protectable while defendants claim that it is either generic or descriptive without a secondary meaning. (Defs.' Cross Mot. Br. pp. 11–28, Pl.'s Reply Br. pp. 13–15.) Significantly, Judge Hillman declined to rule on SILENT SKATE's classification. (Mot. J. Pleadings Op. p. 12.) Rather, Judge Hillman adopted his finding of the mark's validity from his preliminary injunction opinion, expressly stated that he was "not ruling that Defendant[s were] incapable of proving that the mark is generic," and concluded that such analysis was better suited for a more fully developed record. (*Id.* pp. 11, 12.)

It is plaintiff's burden to prove that her mark is protectable because it does not appear on the Principal Register. *See E.T. Browne Drug Co.*, 538 F.3d at 191. Suggestive marks suggest the qualities and characteristics of the product, but imagination, thought, or perception are necessary to determine the actual nature of the product. *MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 405 (D.N.J. 2008). Descriptive marks "describe the intended purpose, function, use, size, or class of users of the goods, and convey an immediate idea of the qualities or characteristics of the good." *Id.* Generic marks "function as the common descriptive name of a product class." *Id.* The difference between generic and descriptive terms is a matter of degree rather than type. *J & J Snack Foods, Corp.*, 220 F. Supp. 2d at 375–76. A mark's "very presence on the Supplemental Register indicates a preliminary determination that the

mark is not distinctive of the applicant's goods." 2 J. Thomas McCarthy, *supra,* § 19:36.

The "imagination test" is the most popular means of determining whether a term is descriptive or suggestive, under which "[a] term is suggestive if it requires imagination, thought or perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Engage Healthcare Commc'ns, LLC*, 2018 WL 10339218, at *8 (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 858 (3d Cir. 1992)); *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 599 (D.N.J. 2000) (same). Plaintiff contends that her mark is suggestive because the word "silent" is an illusion. (Pl.'s Reply Br. p. 13.) Skaters are not actually skating in complete silence but rather have the option of listening to music through wireless headphones. (*Id.*) The event space may also not be silent as roller skates make sounds when used and customers may sing or clap along to the music. (*Id.*) Finally, plaintiff states that her "mark is considered suggestive and not descriptive because it is witty, unconventional, and requires imagination on the part of the reader." (*Id.*) I disagree.

The Third Circuit recently held that "Peer-Spectives" was descriptive of medical education courses in a manner similar to "chocolate fudge" describing a flavor of soda. *Engage Healthcare Commc'ns, LLC v. Intellisphere, L.L.C.*, 792 F. App'x 178, 186–87 (3d Cir. 2019) (discussing *A.J. Canfield Co.*). Little imagination was needed for a customer to conclude that "Peer-Spectives" stood for "Peer Perspectives" or that a publisher within the healthcare industry would want peer perspectives associated with their publications. *Id.* at 187; *see also Duffy*, 97 F. Supp. 2d at 599 (finding that little imagination was needed to conclude that "MUTUAL FUND REPORT CARD" referred to a specific type of information product). The same principle applies here. No imagination is

11

needed for a customer to conclude that SILENT SKATE refers to skating in silence, whether that silence is perceived by the skaters themselves or others in the event space.

The fact that skaters may be listening to music or making noise themselves does not make the mark suggestive. First, defendants' exhibits showing that "silent" has been combined with disco, paint and sip, and other skating events provide some, if not determinative, indication that the consuming public does not interpret "silent" so literally. (ECF Nos. 191–8, 191–9.) Plaintiff does not dispute that the word "silent" is used to advertise activities utilizing headphones. (Pl.'s Resp. Facts p. 3.) Even without this context, however, SILENT SKATE "is a succinct and exact definition of the use of this particular type" of event, even if some customers may not have seen "silent" used in a similar way. *See J & J Snack Foods, Corp.*, 220 F. Supp. 2d at 378 (finding that "BREAK & BAKE" was not suggestive for a type of cookie dough because it "directly describe[d] the process of preparing the cookies").

Second, that SILENT SKATE may not be all-inclusive of the customer experience does not lead to a distinctive classification. For instance, in *Vista India v. Raaga, LLC*, the court concluded that "RAAGA" was no more than descriptive because a customer would immediately understand that the goods sold were music, specifically Indian music, even though other South Asian music and film products were also sold. 501 F. Supp. 2d 605, 617–18 (D.N.J. 2007). That a customer may skate in silence, listen to music, sing, or make other noise does mean that more imagination, thought, or perception is required to understand plaintiff's events.

Finally, the relative wittiness of plaintiff's mark is not determinative of whether it is suggestive. "[T]he difference between a descriptive term and a suggestive term is not one of wittiness or conceivability, but depends on whether the term identifies a quality of the article or merely suggests the

nature of the goods." *J & J Snack Foods, Corp.*, 220 F. Supp. 2d at 379. Again, plaintiff's mark directly describes two prominent features of her events. I conclude that no reasonable jury could determine that SILENT SKATE is suggestive and the mark is, at best, descriptive. Because I find below that the mark has not acquired a secondary meaning, I need not decide here whether SILENT SKATE is generic or descriptive. *Duffy*, 97 F. Supp. 2d at 599.

### C. The Mark Has Not Acquired a Secondary Meaning

The Third Circuit has identified a non-exhaustive list of 11 factors used to determine whether a term has acquired a secondary meaning:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

*E.T. Browne Drug Co.*, 538 F.3d at 199 (quoting *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)).

The more descriptive the term is, the higher the evidentiary bar. *Id.* "A plaintiff must establish secondary meaning in a mark at the time and place that the defendant began use of the mark." *Vista India*, 501 F. Supp. 2d at 613 (quoting *Com. Nat'l Ins. Servs., Inc.*, 214 F.3d at 438). The secondary-meaning test is not to be based upon a mechanical application of the 11 factors or counting how many factors a plaintiff does or does not satisfy. *Engage Healthcare Commc'ns, LLC*, 792 F. App'x at 185. Rather, "the hallmark of secondary meaning remains 'when the mark is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services.'" *Id.* (quoting *Com. Nat'l Ins. Servs., Inc.*, 214 F.3d at 438).

An analysis of the relevant factors leads me to conclude that plaintiff, at times by her own admission, has failed to establish that SILENT SKATE has acquired a secondary meaning.

First, with respect to size, sales, and advertising, plaintiff concedes that her business has never generated more than $20,000 in a year, she does not have an advertising budget, and she has not invested more than $3,500 in her mark. (Pl.'s Resp. Facts p. 4.) She admits that she has not provided tax returns or other financial documents during this litigation. (*Id.* pp. 3, 4.)[7] Elsewhere in her deposition testimony, plaintiff claimed that she spent approximately $1,500 to $2,000 per year on marketing and did not generate any income during 2020 due to the pandemic. (Defs.' Ex. D pp. 90:2–5, 117:22–25.) Plaintiff's estimated profits, which cannot even be corroborated by tax documents or other accountings, combined with her modest, ad-hoc marketing disfavors finding that SILENT SKATE has acquired a secondary meaning. *See Chrin Hauling, Inc. v. Chrin*, Case No. 21–03328, 2023 WL 6985660, at *6 (E.D. Pa. Oct. 23, 2023) (finding that the plaintiffs did not engage in extensive advertising, plaintiffs did not keep a record of their advertising budget, and the reach of plaintiffs' advertisements was unclear, cutting against a finding of secondary meaning); *Diamond State Door, LLC v. Diamond State Pole Bldgs., LLC*, Case No. 21–01258, 2023 WL 3625000, at *9 (D. Del. May 24, 2023) (granting summary judgment and concluding that the plaintiff's mark did not

---

[7] Plaintiff disputes, however, defendants' assertion that she has failed to provide any documentation of actual damages as she has elected to seek statutory damages pursuant to 15 U.S.C. § 1117. (Pl.'s Resp. Facts pp. 3, 4.) Courts possess broad discretion in setting statutory damages awards, but such awards are nonetheless intended to serve as a substitute for actual damages and thus ought to bear some resemblance to actual damages suffered. *See Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 687 (D.N.J. 2015). Because I find against plaintiff, I need not determine an appropriate award and, instead, consider plaintiff's lack of documentation solely for the purpose of determining whether SILENT SKATE has acquired a secondary meaning.

acquire a secondary meaning, in part, because the plaintiff did not conduct extensive advertising or provide evidence of its size, sales, or customer base "to support the inference that many people associate its mark with itself"); *Lamberti v. Positano Ristorante, Inc.*, Case No. 04–04485, 2005 WL 627975, at *6 (E.D. Pa. Mar. 16, 2005) (noting that the defendant's minimal evidence of modest sales, limited to his own deposition testimony, provided "a mere 'scintilla of evidence' that 'Positano Ristorante' ha[d] acquired secondary meaning" (quoting *Country Floors v. P'ship of Gepner and Ford*, 930 F.2d 1056, 1061–62 (3d Cir. 1991))).

Second, plaintiff has admitted that she has been inconsistent in her use of SILENT SKATE, seldom including trademark or registration notices and often adding her nickname, Peachie. (Pl.'s Resp. Facts p.3.) I agree with defendants that plaintiff's use of her mark and arguments here are analogous to those made in *E.T. Browne Drug Co.*, in which the appellant sought to establish a secondary meaning for "Cocoa Butter Formula" even though it always used the term "Palmer's Cocoa Butter Formula." 538 F.3d at 200. The Third Circuit concluded that the record could not enable a jury to evaluate the strength of "Cocoa Butter Formula" independently from "Palmer's." *Id.* Additionally, "[t]hough the use of a 'TM' symbol on an unregistered trademark does not conclusively establish trademark use, the use or nonuse of the 'TM' symbol is probative of whether a party intended to convey a message to the public that it was asserting trademark use." *Kars 4 Kids, Inc. v. Am. Can!*, Case Nos. 14–07770 & 16–04232, 2019 WL 1755912, at *10 (D.N.J. Apr. 18, 2019) (discussing Federal Rule of Evidence 403).

Third, though plaintiff does not directly address defendants' copying of SILENT SKATE, she alleges that they have used a confusingly similar mark. (Pl.'s Mot. Summ. J. p.17.) I note that defendants acknowledge that they learned of plaintiff and her business no later than April 2019. (Defs.' Ex. E

p. 2.) Yet Cascade continued to host "Silent Sk8" events and Live Life continued to pursue a trademark for SILENT SK8 into 2021. (Pl.'s Mot. Ex. pp. 15–26, Defs.' Ex. A pp. 26–32, 42–49.)

To the extent that these efforts may evidence an intent to copy, I find them to be of minimal value because "intentional copying does not alone establish secondary meaning because 'the relevant intent is not just the intent to copy, but to "pass off" one's goods as those of another.'" *Buzz Bee Toys, Inc. v. Swimways Corp.*, 20 F. Supp. 3d 483, 502 (D.N.J. 2014) (quoting *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 45 (1st Cir. 2001) (applying the 11 factors to a trade-dress infringement claim)); *see also Am. Infrastructure v. Zachry Constr. Corp.*, No. 08–02701, 2010 WL 5464765, at *13 (E.D. Pa. Dec. 28, 2010) ("A defendant's knowledge of a plaintiff's mark prior to adopting its mark is not, on its own, sufficient to find an intent to copy."). Even to the extent that the record supports an intent to copy by the defendants, it is devoid of any evidence that could support a jury's finding that defendants sought to "pass off" their events as plaintiff's. This is particularly so as the parties do not dispute that defendants have held such events exclusively in Georgia and South Carolina. (Pl.'s Resp. Facts p. 2.)

Fourth, I turn to customer surveys, customer testimony, and trade journals. Courts place particular weight in customer surveys and testimony because, though they "are not dispositive, they are the only direct evidence of secondary meaning." *King of Prussia Dental Assocs., Ltd. v. King of Prussia Dental Care, LLC*, Case No. 19–01688, 2019 WL 2240492, at *12 (E.D. Pa. May 23, 2019). Here, plaintiff has provided no such evidence, weighing against a finding that SILENT SKATE has acquired a secondary meaning. *See id.* ("[T]he lack of evidence of customer surveys and customer testimony weighs against a finding of secondary meaning."); *Com. Bancorp, Inc.*, 285 F. Supp. 2d

16

at 488 (concluding that the lack of customer surveys and testimony supported a finding that the term did not acquire a secondary meaning in Florida).

Insofar as plaintiff cites a Courier Post article reporting on this lawsuit as evidence of distinctiveness (Pl.'s Reply Br. p. 9), such evidence does not support a finding that the mark acquired a secondary meaning in Georgia or South Carolina as of November 2018. *See Vista India*, 501 F. Supp. 2d at 619 (finding that newspaper and magazine articles referenced by the plaintiff did not support its assertion that the mark acquired a secondary meaning at the time and place that the defendant began using the mark); *Com. Bancorp, Inc.*, 285 F. Supp. 2d at 488–89 (concluding that the plaintiff's references to newspapers common to the mid-Atlantic region were not probative of whether the mark acquired a secondary meaning in Florida).

Finally, as for actual confusion, plaintiff cites a 2021 incident in which an individual named Tyanna Lashae purchased a ticket for one of defendants' events in Atlanta thinking that it was for one of plaintiff's events in New Jersey. (Pl.'s Mot. Ex. pp. 43–46.) Other examples of alleged confusion include social-media messages plaintiff received inquiring about or notifying her of defendants' events. (ECF Nos. 68–1, 68–3, 68–6, 68–7, 68–8, 68–9.) At least some of these examples do not evidence confusion and, to the contrary, appear to be senders notifying plaintiff of events that they knew were not hers. Further, these messages are of little probative value insofar as they were sent by plaintiff's friends or acquaintances. *See Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 236 (3d Cir. 2017). This leaves the Lashae emails and, perhaps, an inquiry from "Q" asking about an event that was not plaintiff's but also not clearly attributed to defendants. (ECF Nos. 68–6, 68–8.) Plaintiff asserts, without support, that "one or two basic statement[s] can … go a long way to cause confusion." (Pl.'s Mot. Summ. J. p. 14.) To the contrary, I find that plaintiff's few examples support a conclusion that SILENT SKATE has not

acquired a secondary meaning.  *See Parks LLC*, 863 F.3d at 236 ("[T]he paucity of proof of actual confusion suggests that the … mark lacks secondary meaning.").

In sum, it was plaintiff's burden to establish that 1) her mark is valid and legally protectable, 2) it is owned by her, and 3) defendants' use is likely to create confusion regarding their respective events.  *See Kars 4 Kids Inc.*, 8 F.4th at 218.  While plaintiff asserts that her registration is *prima facie* evidence of its validity (Pl.'s Mot. Summ. J. p.14) that presumption does not apply as her mark appears on the Supplemental Register, *see Colur World, LLC v. SmartHealth, Inc.*, Case No. 09–00505, 2010 WL 299512, at *3 (E.D. Pa. Jan. 25, 2010) ("When a mark is not registered on the Principal Register … to establish validity and protectability, [p]laintiff must show that the mark it seeks to protect is inherently distinctive or that it has developed secondary meaning.").  Further, though plaintiff succeeded at the pleadings stage, defendants raise a distinct issue here and "the whole point of the summary judgment procedure is to go beyond the pleadings and to assess the proof in order to determine whether there is a genuine need for a trial."  *Stone v. Sec'y U.S. Dep't of Homeland Sec.*, 705 F. App'x 76, 78 (3d Cir. 2017).  Because I conclude that no reasonable jury could conclude that plaintiff's mark is anything more than descriptive or has acquired a secondary meaning, she has not established that her mark is protectable and summary judgment will be entered in defendants' favor.  *See Engage Healthcare Commc'ns, LLC*, 792 F. App'x at 186 (holding that, because the mark was unenforceable, defendants could not have infringed it).

### D.   Cancellation of Plaintiff's Mark, Fees, and Costs

Defendants close their moving brief by requesting—in addition to summary judgment in their favor—an order directing USPTO to cancel

18

plaintiff's registration and an award of attorney's fees and costs. (Defs.' Cross Mot. Br. p. 32.) I decline to provide these additional forms of relief.

First, defendants' request for fees and costs is a departure from the "American Rule" by which each party pays its own fees. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 281 (3d Cir. 2018).[8] Courts must identify a reason for departure before providing fees and costs contrary to this general rule. *Id.* Defendants fail to support their entitlement to fees and costs and I will thus deny their request without prejudice.

Second, a court's "power to cancel trademarks derives solely from 15 U.S.C. § 1119." *Fenwick v. Dukhman*, Case No. 13–04359, 2015 WL 1307382, at *7 (D.N.J. Mar. 20, 2015). Defendants do not cite § 1119 and provide little indication for the basis of their request beyond concluding the section of their brief arguing that plaintiff's mark is generic by stating "[s]ummary judgment should be granted in favor of Defendants on this point alone, along with an order to the USPTO canceling her registration." (Defs.' Cross Mot. Br. p. 16.)

"In any action involving a registered mark the court may … order the cancelation of registrations …." 15 U.S.C. § 1119. "While petitioning the USPTO is 'the primary means of securing a cancellation,' district courts can directly 'order cancellation' because of their 'concurrent power' with the USPTO." *Hipple v. SCIX, LLC*, 778 F. App'x 119, 122 (3d Cir. 2019) (quoting *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992)).

Assuming, based on the only indication provided, that defendants premise their request for cancellation on the genericness of plaintiff's mark, the request is denied. This opinion does not rest on plaintiff's mark being generic, but rather on my conclusion that the mark is no more than descriptive and has not

---

[8] Defendants' request for fees and costs is also contrary to their proposed order, which states that "each party [is] to bear its own costs and fees." (ECF No. 191–4.)

acquired a secondary meaning. A descriptive term lacking a secondary meaning may appear on the Supplemental Register as plaintiff's does. *See E.T. Browne Drug Co.*, 538 F.3d at 202. Because I have not adopted defendants' argument that the mark is definitively generic and defendants provide no clear basis or explanation for their cancellation request, I will deny the request without prejudice.

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion will be DENIED and defendants' operative motion will be GRANTED. Defendants original, substituted motion will be administratively terminated as moot. Defendants' requests to cancel plaintiff's registration and award attorney's fees and costs are denied without prejudice. An appropriate order accompanies this opinion.

                                                 */s/ Edward S. Kiel*
                                                 **EDWARD S. KIEL**
                                                 **UNITED STATES DISTRICT JUDGE**

Dated: August 16, 2024